UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL LAMAR SMITH-ELLIS (D-1),

    Defendant.

_____/

Case No. 24-20116

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [49]**

Defendant Michael Lamar Smith-Ellis is indicted in this matter with two counts of robbery of mail and other property of the United States by use of a dangerous weapon in violation of 18 U.S.C. §§ 2114(a), 2; one count of use and carry of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c), 2; and one count of stealing or unlawfully possessing keys adopted by the post office in violation of 18 U.S.C. §§ 1704, 2. (ECF No. 26.) Before the Court is Defendant's motion to suppress evidence. (ECF No. 49.) Defendant argues that the affidavits submitted with the warrants that led to the search of his home and cell phones did not support a finding of probable cause. The government opposes the motion. (ECF No. 55.) The Court held a hearing on October 7, 2024. For the reasons below, the Court DENIES Defendant's motion.

**I.    Background**

Magistrate Judge David R. Grand authorized the underlying search warrants following his review of two affidavits submitted by Inspector Ryan Davidson of the United States Postal Inspection Service ("USPIS"). The first affidavit was dated October 25, 2023 and led to the search of a house located on Winthrop Street in Detroit. (ECF No. 49-1.)

1

The second affidavit was dated October 27, 2023 and led to the search of three phones seized out of the Hyundai rental car that was being driven by Defendant following the second robbery.[1] (ECF No. 49-2.)

The following information was set forth in both affidavits:

On September 25, 2023, two armed robbers approached a United States Postal Service ("USPS") mail carrier at an apartment complex in Taylor, Michigan. The men tried to rip the keys, including an arrow key, off her loop, and she gave them the key.[2] The victim described the assailants as African American males wearing all black with black ski masks. The victim could identify the weapon held by one of the robbers as a Glock-style gun but could not identify the other individual's weapon. The men took off in a black pickup truck. The apartment complex's surveillance camera showed a truck with distinctive features but no license plate. It also showed that one of the robbers had a Draco-style rifle and the other a handgun.

After law enforcement officers reviewed traffic cameras and a gas station camera in Taylor, they found a matching truck with a license plate. A query into the license plate led to a registration by Avis Car Rental. According to Avis, Defendant rented this truck a few days prior to the robbery. Law enforcement confirmed the information Defendant provided to Avis by ascertaining that he was the subscriber of the listed phone number. Defendant had provided the Winthrop address as his address to Avis. The day after the

---

[1] The government notes that one of the phones belonged to the second defendant in this case, Tucker, not Defendant.
[2] The USPS uses a universal key, known as an arrow key, to access collection boxes, outdoor parcel lockers, cluster box units, and apartment panels.

2

robbery, a USPIS inspector surveilled the home and saw a truck matching the robbers' vehicle in the driveway.

On September 27, 2023, USPIS spoke with a source of information, who came forward after seeing the reward poster for information about the suspects. The source wore a mask during the conversation and refused to identify himself. Yet, according to the affiant, law enforcement was able to identify him based on his characteristics and the vehicle he drove. He was "known in the community to have criminal history including drug crimes." According to the source, a crew of two or three individuals were robbing mailboxes at night with a key that had been stolen in an earlier robbery that occurred on September 1, 2023. According to the source, that key was lost or thrown away and that is why the individuals conducted another armed robbery. The source stated that Defendant was an Amazon driver, had used his job to justify being at mailboxes at night, had rented the truck for the robbery, and resided at the Winthrop address. The source stated that he had seen piles of IDs, mail, and goods purchased with the stolen credit cards/checks at that address and that Defendant had the guns that were visible in the reward poster. The source refused to provide further information unless USPIS provided him with the reward money.

The affiant confirmed that Defendant was a driver for Amazon. Also, Secretary of State records indicated that Defendant's driver's license listed the Winthrop address. And the Michigan weapons registry indicated that Defendant owned a Draco-style rifle and a Glock handgun.

On October 24, 2023, another mail carrier robbery occurred in Northville, Michigan. This time the two African American males were driving a gray Hyundai SUV. Based on

3

the information provided by the victim, dispatch sent out a "Be On the Look Out" notification to surrounding law enforcement for the vehicle. Within ten minutes, police came across the vehicle and conducted a traffic stop. Officers saw in plain view a long gun and pistol as well as what appeared to be a black face covering in the center console. Both individuals in the car, one of whom identified himself as Defendant, were arrested.

The affiant also relied on his training and experience to support his belief that fruits and evidence of the robberies would be found at the Winthrop address.

The affidavit supporting the search of the phones also stated the following:

According to the source, he had overheard Defendant discussing a recent mail carrier robbery on the phone with another person in September 2023.

After the arrest, a law enforcement inquiry into the gray Hyundai revealed that Defendant rented the vehicle from Avis. A federal search warrant for the car was authorized.[3] In the car, law enforcement found a USPS key ring with one arrow key, two guns (a Glock pistol and a Draco-style rifle), black clothing, gloves, black masks, credit cards, and an unopened envelope in someone else's name. There were also three phones. One of the phones was plugged into the car. When picked up, its screen lit up, showing Defendant's image in the background and several notifications, including Amazon's alerts of packages ready to be picked up.

Two days after the arrest, authorities executed the warrant to search the Winthrop address and found three additional arrow keys, one of which had the same serial number of the arrow key taken from the victim of the September 25 robbery.

---

[3] Defendant does not challenge this search warrant.

4

The affiant noted that Defendant and his co-defendant were in possession of the phones at the time of their arrest. The affiant also relied on his training, experience, and discussions with others at USPIS who had experience investigating robberies to support his belief that the phones contained evidence, fruits, and instrumentalities of the robberies.

## II.     Legal Standard

To determine whether probable cause for a search exists, the judge issuing a warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). There must be "a nexus between the place to be searched and the evidence sought." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (internal quotation marks and citation omitted). "In other words, the affidavit must suggest that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought and not merely that the owner of property is suspected of a crime." *Id.* While the magistrate judge's determination of probable cause is owed "great deference," the reviewing court must "ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 236, 238-39 (internal quotation marks and citation omitted).

## III.    Analysis

Defendant argues that the underlying affidavits failed to establish probable cause. More specifically, Defendant argues that because the source was unreliable, the information he provided should not have been considered when making a determination

as to probable cause. Defendant also states that the affidavits were so inadequate, the good faith exception does not apply.

Defendant emphasizes that the informant refused to provide his name, wore a mask the entire time he discussed the matter with inspectors, and gave vague information. While the Court agrees that these circumstances raise a question regarding the source's reliability, "information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information." *See United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000). Here, law enforcement was able to independently corroborate several pieces of information, including that Defendant was an Amazon driver, he owned a Draco-style rifle and a Glock handgun, and his residence was the home to be searched. Thus, the information provided by the source could be considered along with the other facts alleged in the affidavits, such as the evidence obtained by law enforcement that led to the identification of Defendant (prior to the source coming forward), his arrest following the second robbery while driving the getaway car, and his possession of criminal instrumentalities. Considering the totality of the circumstances set forth in the affidavits, the Magistrate Judge had a substantial basis for concluding that probable cause existed for the search of Defendant's home and phones.[4]

But even if the searches were not supported by probable cause, the Court would not find suppression appropriate here. The exclusionary rule does not bar the admission

---

[4] To the extent Defendant attempts to raise a staleness argument, the Court does not find the information provided in the affidavits stale, especially when the second robbery took place so close in time to the date the affidavits were presented to the Magistrate Judge.

of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). Here, the affidavits were not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" thus, the *Leon* good faith exception would apply. *See id.* at 923 (internal quotation marks and citation omitted); *see also United States v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005) ("We previously found *Leon* applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched even if the information provided was not enough to establish probable cause.") (internal quotation marks and citation omitted).

In sum, the searches of Defendant's home and phones were supported by probable cause. Alternatively, the *Leon* good faith exception would apply.

## IV. Conclusion

For the reasons above, Defendant's motion to suppress evidence is DENIED.

SO ORDERED.

                                                     s/Nancy G. Edmunds
                                                     Nancy G. Edmunds
                                                     United States District Judge

Dated: November 27, 2024